# 2014-1668

In The

# United States Court Of Appeals

## For The Federal Circuit

**TNS MEDIA RESEARCH, LLC, DBA Kantar Media Audiences,
CAVENDISH SQUARE HOLDING B.V.,**

*Plaintiffs - Appellees,*

v.

**TIVO RESEARCH AND ANALYTICS, INC., DBA TRA, Inc.,**

*Defendant - Appellant.*

Appeal from the United States District Court for the Southern District of
New York case no. 1:11-cv-04039-SAS

————————

## NON-CONFIDENTIAL REPLY BRIEF OF APPELLANT

————————

**Perry M. Goldberg**
**Kevin S. Rosenberg**
**GOLDBERG, LOWENSTEIN
 & WEATHERWAX LLP**
**11400 West Olympic Blvd.**
**Suite 400**
**Los Angeles, CA  90064**
**(310) 307-4500**

*Counsel for Appellant*

# TABLE OF CONTENTS

**PAGE:**

TABLE OF CONTENTS ..................................................................... i

TABLE OF AUTHORITIES .............................................................. iii

TABLE OF ABBREVIATIONS ........................................................... vi

INTRODUCTION ............................................................................. 1

ARGUMENT .................................................................................... 2

    I.    Patent Issues .......................................................................... 2

        A.    Kantar Leaves TRA's "Purchase Data" Evidence Unrebutted ................................................................. 2

        B.    On The Auto Products, TRA Does Not Rely Upon A "Generic Credibility Attack" But Instead A Specific Document, Produced By Kantar In This Litigation .................... 8

        C.    Kantar Concedes TRA's Point Regarding DOE ....................... 10

        D.    Kantar Fails To Defend An Incorrect Claim Construction ....... 11

        E.    Kantar's Attempt To Raise An Additional Argument Is Procedurally Improper And Wrong On The Merits ................. 12

    II.    Trade Secrets ....................................................................... 14

        A.    Kantar Rewrites History Regarding TRA's Disclosures, Which Did Not Merit Terminating, Or Any, Sanctions .......... 14

        B.    Kantar Cannot Defend The Substantive Trade Secrets Rulings ............................................................................. 17

            1.    Speed, Reliability, And Performance Trade Secret ........ 18

            2.    TRA's Remaining Trade Secrets .................................... 19

i

III.    Damages ........................................................................21

     A.    Kantar Provides No Basis To Affirm Bennis's Exclusion .......22

     B.    Kantar Cannot Meaningfully Attack TRA's Other
         Damages Evidence ..................................................25

IV.    Other Remedies ..............................................................27

     A.    Kantar's Effort To Exclude TRA's Other Theory Of
         Compensatory Damages Ignores The Record .........................27

     B.    Kantar Defends The Punitive Damages Ruling By
         Ignoring Its Flaws ..................................................28

     C.    Kantar Relies On Inapplicable Injunction Cases And
         Misreads Its Contracts.............................................29

     D.    TRA Did Not Waive Jury Trial On Nominal Damages ..........30

V.    Reassignment is Warranted...............................................31

CONCLUSION .................................................................33

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

## **CONFIDENTIAL MATERIALS STATEMENT**

Pursuant to Fed. Cir. Rule 28(d)(1)(B), confidential material has been redacted from this brief on pages 3-10, 18-20, 24-25, 28-29.

Specifically, confidential information, which includes sensitive business and/or trade secret information, that is subject to the district court's protective order has been redacted throughout the brief.

# TABLE OF AUTHORITIES

**PAGE(S):**

## CASES:

A.F.A. Tours, Inc. v. Whitchurch,
937 F.2d 82 (2d Cir. 1991) ...........................................................20

Apple Inc. v. Motorola, Inc.,
757 F.3d 1286 (Fed. Cir. 2014) ....................................................26

Aristocrat Techs. Austl. PTY Ltd. v. Int'l Game Tech.,
709 F.3d 1348 (Fed. Cir. 2013) ....................................................13

Bobal v. Rensselaer Polytechnic Inst.,
916 F.2d 759 (2d Cir. 1990) .........................................................16

Boucher v. U.S. Suzuki Motor Corp.,
73 F.3d 18 (2d Cir. 1996) .............................................................24

Brooktree Corp. v. AMD,
977 F.2d 1555 (Fed. Cir. 1992) ....................................................26

Design Strategy v. Davis,
469 F.3d 284 (2d Cir. 2006) .........................................................17

Doubleclick Inc. v. Henderson,
1997 N.Y. Misc. LEXIS 577 (N.Y. Sup. Ct. 1997) .....................20

E-Pass Techs., Inc. v. 3Com Corp.,
473 F.3d 1213 (Fed. Cir. 2007) ....................................................10

Exxon Chem. Patents v. Lubrizol Corp.,
64 F.3d 1553 (Fed. Cir. 1995) ......................................................12

Graver Tank & Mfg. Co. v. Linde Air Products Co.,
339 U.S. 605 (1950) ......................................................................11

H.H. Robertson, Co. v. United Steel Deck, Inc.,
820 F.2d 384 (Fed. Cir. 1987) ......................................................12

Helmsderfer v. Bobrick Washroom Equip., Inc.,
    527 F.3d 1379 (Fed. Cir. 2008) ....................................................14

IBM v. Papermaster,
    2008 U.S. Dist. LEXIS 95516 (S.D.N.Y. 2008) ...........................19

Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.,
    285 F.3d 1353 (Fed. Cir. 2002) .............................................18, 29

Ligon v. City of New York (In re Reassignment of Cases),
    736 F.3d 118 (2d Cir. 2013) vacated in part on other grounds by,
    Ligon v. City of New York,
    743 F.3d 362 (2d Cir. 2014) ........................................................31

Marvel Characters, Inc. v. Kirby,
    726 F.3d. 119 (2d Cir. 2013) ........................................................22

MSCI Inc. v. Jacob,
    945 N.Y.S.2d 863 (N.Y. Sup. Ct. 2012)......................................16

N. Atl. Instruments, Inc. v. Haber,
    188 F.3d 38 (2d Cir. 1999) ..................................................... 19-20

Pandrol USA, LP v. Airboss Ry. Products,
    320 F.3d 1354 (Fed. Cir. 2003) .............................................21, 27

Petrosino v. Bell Atl.,
    385 F.3d 210 (2d Cir. 2004) ....................................................5, 9

Regulatory Fundamentals Group LLC v.
Governance Risk Mgmt. Compliance, LLC,
    2014 U.S. Dist. LEXIS 107616 (S.D.N.Y. Aug. 5, 2014) ...........16

Roginsky v. Richardson-Merrell, Inc.,
    378 F.2d 832 (2d Cir. 1967) ........................................................28

Shanahan v. Vallat,
    2008 U.S. Dist. LEXIS 77608 (S.D.N.Y. Oct. 3, 2008)...............22

Silva v. Cofresi,
    2014 U.S. Dist. LEXIS 163140 (S.D.N.Y. Oct. 31, 2014) ..........16

Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.,
    762 F.3d 165 (2d Cir. 2014) ...................................................................21, 27

Speedry Chem. Prods., Inc. v. Carter's Ink Co.,
    306 F.2d 328 (2d Cir. 1962) ........................................................................18

The Estee Lauder Cos., Inc. v. Batra,
    430 F. Supp. 2d 158 (S.D.N.Y. 2006) ...........................................................19

Tolan v. Cotton,
    572 U.S. ___, 134 S. Ct. 1861 (May 5, 2014)..........................................8, 10

United States v. Awadallah,
    436 F.3d 125 (2d Cir. 2006) ........................................................................31

Verizon Servs. Corp. v. Vonage Holdings Corp.,
    503 F.3d 1295 (Fed. Cir. 2007) ...................................................................13

Versata Software, Inc. v. SAP Am., Inc.,
    717 F.3d 1255 (Fed. Cir. 2013) .....................................................................6

Washburn v. Merck & Co,
    213 F.3d 627 (2d Cir. 2000) ........................................................................22

West v. Goodyear Tire & Rubber Co.,
    167 F.3d 776 (2d Cir. 1999) ........................................................................17

Wills v. Amerada Hess Corp.,
    379 F.3d 32 (2d Cir. 2004) ..........................................................................23

**RULES:**

Fed. R. Civ. P. 37 ...........................................................................................15

Fed. R. Civ. P. 37(c)........................................................................................17

Fed. R. Evid. 602.............................................................................................4

## **TABLE OF ABBREVIATIONS**

| | |
|---|---|
| Kantar | The Appellees (TNS Media Research, LLC, d/b/a/ Kantar Media Audiences; Cavendish Square Holding B.V; WPP PLC; WPP Group USA, Inc.; Kantar Group Ltd.; and Kantar Retail America, Inc.) |
| KB | Kantar's Answering Brief |
| TRAB | TRA's Opening Brief |
| Unadjudicated Claims | TRA's claims for breach of contract and aiding and abetting breach of fiduciary duty |

Although this appeal implicates all of the entities identified above as Appellees, only TNS (d/b/a Kantar Media) and Cavendish have filed a brief in this Court. KB2.  The others have taken no position on the issues raised by TRA's appeal.  Id.

**INTRODUCTION**

Kantar faces a tall order defending the district court's rulings on Kantar's successively-filed dispositive motions.  Despite an abundance of evidence supporting TRA's claims (and showing, at the least, material factual disputes), the court decided virtually every issue in Kantar's favor – no less than 18 discrete issues[1] – annihilating TRA's claims and denying TRA the opportunity to submit any of its claims to a jury.  Had the court decided *any one* of these 18 issues in TRA's favor, the case below would have continued, as it should have.  Instead, the court weighed evidence, made credibility determinations, and repeatedly drew inferences in Kantar's favor, among other errors, turning the summary judgment procedure on its head.

Kantar tries to set the stage and minimize the significance of TRA's technological achievements by suggesting Kantar's entry into the "single source" market pre-dated TRA.  KB4-6.  Indeed, Kantar states it has for years been in the business of "linking data about what a household watches on television with what

---

[1] The outcome-pivotal rulings comprise four patent rulings (literal infringement (CPG); literal infringement (Auto Products); DOE; judicial estoppel), rulings eliminating TRA's five separate trade secrets, rulings eliminating TRA's two main compensatory damages theories (lost valuation; R&D), elimination of punitive damages, at least five rulings regarding injunctive relief (denying such relief as to each of four separately-breached contracts plus the fiduciary duty claim), and no jury trial on nominal damages.

1

that household purchases." KB4-5.[2] But the evidence shows TRA was the first to do so without using a supplemental collection device (among other innovations) (A1541-42, A1767, A1772), though the validity of TRA's patents is not at issue and Kantar's lengthy discussion of its product history does nothing to advance its arguments. In the end, Kantar simply cannot defend the court's multiple flawed rulings.

## ARGUMENT

### I.    Patent Issues

#### A.    Kantar Leaves TRA's "Purchase Data" Evidence Unrebutted.

The sole basis for summary adjudication of TRA's infringement claims regarding Kantar's CPG products was the court's conclusion that those products cannot collect "data describing the purchase of a particular product at a given time" (as required by the stipulated claim construction) because the CPG products purportedly "**do not make use of temporal data at all**." A150. Kantar urged this position, insisting its CPG Products "**indicate nothing at all about time**." A1869. Despite Kantar's attempt to reframe the issue, the central question on appeal is whether the CPG Products "make any use of temporal data," that is, whether they indicate "anything at all about time."

---

[2] Kantar wrongly painted this picture at the preliminary injunction stage, initially leading the court to believe Kantar's system was prior art, a finding the court had to later correct. A64.

TRA has provided ample evidence, including statements from Kantar witnesses and screenshots from Kantar's products, showing that the CPG products *do* make use of temporal data, especially ███████████ about when a product was purchased.  TRAB17-20.  Kantar has very little to say about this evidence.

TRA's opening brief quotes Alex North's testimony prominently.  TRAB18-19.  Mr. North, a Product Manager for the accused CPG products, testified repeatedly that ██████████████████████████████████████████████████ ██████████████████████████████ According to North, Kantar's accused RapidView Retail product ██████████████████████████████████████ ██████████████████████" or, stated more generally, ████████████████████ ██████████████████████████████ A1568-69 at 20:17-21:7 (emphasis added).  As North explained ████████████████████████████████ ██████████████████████████████████████████████████████ ██████████ A1573 at 71:5-9 (emphasis added).  And North emphasized that ██████████████████████████████████████████████████████████ ██████████████████████████████████████ A1798 (quoting North depo at 76:2-10).  In opposing summary judgment, TRA emphasized this, and additional, similar testimony from North, to establish that the CPG products contain "temporal data."  A1433, 1986.  Incredibly, Kantar's Answering Brief does not even mention North's testimony, much less explain how North's testimony

does not, at the very least, create a triable issue of fact as to whether the accused CPG products collect purchase data.  See KB17-23.

Nor does Kantar say much about the screenshots *from the accused products themselves*, showing that ███████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████████ TRAB17-18.  Kantar's only answer is to assert summarily that the screenshots' temporal references describe not when products were purchased, but instead when "the match was made."  KB22.  This assertion is unconvincing.  First, Kantar supports it only with speculation: ██████████████ ██████████████ North stated, when asked about the function of certain drop-down menus in the CPG products.  A1575 at 101:9-21 (emphasis added).  Indeed, North frankly acknowledged ██████████████████████ Id. at 101:22-102:4.  Speculative testimony is not evidence.  See FRE 602.  Moreover, less than a page of deposition testimony later, North again ███████████████████████████████████ ████████████████████████████████████ consistent with the rest of his testimony.[3]  There is simply no competent evidence that the screenshots' temporal references are to anything other than ██████████ when products were purchased.

---

[3] ███████████████████████████████████████████████████████ ██████████████████ North said about the CPG products' capabilities, negating his initial and legally conclusory assertion that ███████████████████████████████ ██████████ A1575 at102:15-25 (emphasis added).

Even if viewed in a very charitable light for Kantar, North's off-hand speculation at most forms a fact dispute. However, viewing the movant's evidence in the most favorable light would violate the bedrock legal principal that, at summary judgment, all reasonable inferences are drawn in favor of the non-movant. Petrosino v. Bell Atl., 385 F.3d 210, 219 (2d Cir. 2004). North's speculation that ████████████████████████████████████████████ ██████ as opposed to the date of a purchase, contains an implicit concession that, on the other hand, it ███████████████████ (consistent with North's repeated testimony about ████████████████████). But drawing inferences adverse to TRA is improper. Id.

Unable to rebut TRA's evidence, Kantar instead focuses its response narrowly on "user types." Kantar admits it collects "user types" but insists "user types" can have no relationship to "purchase data," a point it tries to support with references to TRA's patents. KB19-20.

Kantar's "user type" argument is irrelevant. There is no dispute about what "purchase data" is because the parties have stipulated to its meaning, and the stipulation makes no reference to "user types." A77. The relevant question is whether Kantar's products collect "purchase data" as defined by the stipulated

construction.[4]  Regardless, TRA does not contend that "user type" is synonymous with "purchase data"; rather "user type"—the number of purchases made by a user—is a characterization based on "purchase data."  Kantar acknowledges user types are "obviously based upon a certain window over which household behavior is observed."  KB18.

Kantar also acknowledges that "someone must collect underlying [purchase] data in order to characterize the user type."  KB22, n11.  Although Kantar contends it does not possess that underlying data, the record speaks differently.  The screenshots and North's testimony show that the CPG products collect information

███████████████████████████████████████████

█████  A1568-69 at 20:17-21:1 ("████████████████");  A1573 at 71:5-8

("████████████").  The court's conclusion that the CPG products "do not make use of temporal information at all" (A150) is simply untenable.  Moreover, Kantar does not contend that quarterly data fails to satisfy the "at a given time" element of the stipulated claim construction.  A1869 (disavowing dispute over meaning of "given time").

---

[4] Indeed, if permitted to make new claim construction arguments, TRA would point out the patents contain no language indicating that "purchase data" has any temporal component at all.  See, e.g., A248-249.  But the parties must argue under the agreed-upon construction.  Versata Software, Inc. v. SAP Am., Inc., 717 F.3d 1255, 1262 (Fed. Cir. 2013) (no attack on agreed-to claim construction).

Kantar last tries to salvage the ruling by suggesting that the CPG Products contain no information about the purchases of "particular product[s]." KB18. This new contention can be quickly refuted. Although the chart Kantar uses to support its position only shows ███████████████████████████████████ ████████ (KB19), the chart is excerpted—and the excerpt is misleading. The *unexcerpted* chart shows that the CPG products not only ███████████████ ███████████████████████████████████████████████████



A1376.

Moreover, the screenshots likewise show that the CPG products contain information about purchases of particular products, ████████████████████ A2003-04. And North also testified that Kantar's products provide information

about the purchases of, specifically, ███████ and ███████ A1568 at 20:25; A1573 at 71:5-8.

Kantar is unable to defend the judgment on TRA's CPG infringement claims.

**B.    On The Auto Products, TRA Does Not Rely Upon A "Generic Credibility Attack" But Instead A Specific Document, Produced By Kantar In This Litigation.**

Crediting declaration testimony from Kantar Media President George Shababb, the court determined Kantar's Auto Products do not infringe because they supposedly do not practice double-blind matching or rely upon a thesaurus of matched IDs. A154-155. On appeal, Kantar wrongly argues TRA's only basis for challenging the ruling is a "generic credibility attack" on Shababb. KB26-31. But TRA's actual argument is that Shababb's declaration is not the only evidence in the record. That other evidence, *as TRA has repeatedly emphasized* (TRAB26-28), is the written agreement ███████████████████ that Kantar produced to TRA in discovery. As TRA has detailed (TRAB26), that document contradicts Shababb's declaration in critical ways and sets up a classic fact dispute, which should have been entrusted to a jury. Tolan v. Cotton, 572 U.S. ___, 134 S. Ct. 1861, 1866 (May 5, 2014).

Kantar has no answer to TRA's actual argument. Kantar repeats the court's assertion that the ███████████ document "is fully consistent with

8

Shababb's testimony" (KB29), but Kantar makes no attempt to address the
inconsistencies TRA has identified. TRAB26. Kantar maintains that TRA has
waived this argument (KB29), but TRA at all stages of this litigation has
emphasized the ways in which the ███████████ agreement rebuts the
Shababb declaration. A1436-1437; TRAB26.

Attempting additional swipes at the document, Kantar illustrates TRA's own
points. For example, Kantar hypothesizes that the document's "reference to
particular data fields hardly precludes ████████ from sending other fields as
well." KB29. But this requires inferences to be drawn in Kantar's favor, including
that the "sole purpose" of the ██████████ relationship is **not** the
performance of double-blind matching (contrary to the agreement's express
language) and that ████████ sends information to ██████ **beyond** that
identified in the agreement. But on summary judgment, all reasonable inferences
must be drawn in the non-movant's favor. Petrosino, 385 F.3d at 219. One such
inference is that █████████████ perform in the way specified by their
agreement. Similarly, Kantar urges this Court to infer that "████████████"
references data that only might "potential[ly]" exist. KB29. But the more
reasonable inference is that ████████ has such data, since it is specifically
referenced in the agreement.

9

Kantar next asserts that, Kantar Media's President, Shababb should "know" what "Kantar receives from ███████" and what Kantar does not receive from ███████ KB30.  But arguments as to the alleged persuasiveness of Shababb's testimony belong in closing argument, not summary adjudication.  See Tolan, 134 S. Ct. at 1866.

Kantar's only other argument is to cite E-Pass Techs., Inc. v. 3Com Corp., 473 F.3d 1213 (Fed. Cir. 2007), for the proposition that "plans" are not evidence of infringement.  But that case is easily distinguishable.  There, the party resisting summary judgment produced evidence of "plans" to (arguably) practice the invention in another country, when evidence of infringement within the United States was required.  Id. at 1222.  Here, even if the agreement in question is a "draft" that differs from the signed version of the agreement (assumptions which again require inferences in Kantar's favor), it is uncontested that Kantar's Auto Products involve inputs involving ████████████████.  The question is what form those inputs take, and the only document produced by Kantar on that question is competent evidence on that point.

A fact dispute undeniably exists.  It must be decided by a jury.

### C.    Kantar Concedes TRA's Point Regarding DOE.

In addition to its literal infringement case, TRA also should be able to make its case regarding infringement under the DOE.

After ruling TRA's expert testimony regarding DOE was insufficient, the court granted summary judgment.  A152-153.  TRA does not challenge this given the deference afforded evidentiary rulings.  But, as a matter of law, the ruling did not dispose of TRA's claim, because under <u>Graver Tank & Mfg. Co. v. Linde Air Products Co.</u>, 339 U.S. 605, 609-610 (1950), TRA can prove DOE without expert testimony.  Kantar does not dispute that point.  TRA should have its non-expert DOE testimony considered.

### D.    Kantar Fails To Defend An Incorrect Claim Construction.

Although not needed for TRA to prevail on this appeal, TRA has challenged the court's claim construction of "cleansing and editing algorithm" as it may be relevant to future proceedings.  Kantar does not dispute TRA's main point that it is improper to construe a claim in a way that fails to encompass a disclosed example.  As explained (TRAB42-43), the court improperly excluded "weighting algorithms."  Burying its head in the sand, Kantar argues the court's construction does not exclude such algorithms, citing a comment made at the <u>Markman</u> hearing.  KB61.  <u>Id.</u>  But Kantar ignores that the Order expressly excludes such algorithms.  A61-63. The Order controls, and it is unambiguous.

Kantar's only other response is to argue that TRA below promoted a claim construction that is too broad.  KB61.  The question, however, is not whether TRA's proposed construction was flawed, but whether the construction actually

adopted by the court was correct.  It was incumbent on the court to arrive at a legally sufficient claim construction, even if it had to craft one on its own.  <u>Exxon Chem. Patents v. Lubrizol Corp.</u>, 64 F.3d 1553, 1555-56 (Fed. Cir. 1995).  In the event of a remand, correction is needed.

### E.    Kantar's Attempt To Raise An Additional Argument Is Procedurally Improper And Wrong On The Merits.

Kantar posits an entirely new basis for judgment: that certain claim language should be re-construed and the record scoured for strands of evidence entitling Kantar to judgment under the revisited construction.

Kantar's attempt to seek appellate review of this matter raises serious procedural issues.  Although this Court reviews judgments not decisions, Kantar is asking this Court to affirm on a basis never put before the district court as a ground for judgment.  As a consequence, there is no developed record on which to render judgment, even were Kantar's claim construction adopted.  Kantar provides two record cites in support of its alternate judgment request (KB69), but those references are to declarations from the preliminary injunction proceedings, not summary judgment.  "Initial consideration of evidence is not the appellate role." <u>H.H. Robertson, Co. v. United Steel Deck, Inc.</u>, 820 F.2d 384, 389 (Fed. Cir. 1987).

Given the state of the record, Kantar effectively requests a remand with instructions to proceed under a revised construction.  Since a remand is not

affirmance, the only proper way to raise this issue was by a cross-appeal, which Kantar did not take.  See <u>Aristocrat Techs. Austl. PTY Ltd. v. Int'l Game Tech.</u>, 709 F.3d 1348, 1365 (Fed. Cir. 2013) (refusing to affirm summary judgment on alternate ground involving claim construction "especially where [appellee] does not directly appeal that construction").

Beyond these procedural problems, Kantar argues for a plainly incorrect claim construction.  The claims describe the collection of four data types: purchase data (information about what a household purchases); clickstream data (information about what channels a household tunes to); program data (information about what programs aired on a channel); and advertising data (similar information about commercials).  A245.  Kantar argues that TRA's patents require all four data types be collected directly from the household.  KB66.

Kantar's strained construction excludes examples explicitly provided in TRA's specifications, a point Kantar concedes.  KB67.  This is improper.  <u>Verizon Servs. Corp. v. Vonage Holdings Corp.</u>, 503 F.3d 1295, 1305 (Fed. Cir. 2007) (error to interpret claim language in a manner that writes disclosed examples out of patent).  For instance, according to TRA's specifications, "program data…may originate from cable operators, advertising media firms, and other third-party data providers….  Such data may identify what was scheduled to air on each television channel."  A235 at 20:17-22, <u>see also</u> 20:29-34.  Kantar's construction requires

13

such data be collected directly from a household, although the specifications say otherwise.

Further, Kantar fails to give effect to language used throughout the claims. In describing the four data types, the claims make a key distinction: purchase data and clickstream data are described as coming "from" a relevant source type; whereas, program data and advertising data are described as being "associated with" the delivery source. See, e.g., A245 at 39:64-40:20. Kantar's proposal fails to account for this language. But all words of a claim should be given effect. Helmsderfer v. Bobrick Washroom Equip., Inc., 527 F.3d 1379, 1382 (Fed. Cir. 2008).

Moreover, a person of ordinary skill in the art would not understand TRA's inventions to require collecting all data types directly from a household because in the industry program and advertising data are not, as a rule, collected that way. See A55-56.

Procedurally improper and wrong on the merits, Kantar's new argument should be disregarded.

## II.    Trade Secrets

### A.    Kantar Rewrites History Regarding TRA's Disclosures, Which Did Not Merit Terminating, Or Any, Sanctions.

The court's basis for dismissing TRA's trade secret claims was that TRA allegedly did not "identify its trade secrets with specificity prior to the close of

14

discovery." A138-140.  To defend this ruling, Kantar suggests the court adequately warned TRA before entering the sanction.  KB32, 36.  Kantar also argues TRA inadequately disclosed it trade secrets.  KB31-34.  The facts belie Kantar's positions.

Kantar says it sought an order requiring "a more detailed description" of TRA's trade secrets.  KB32.  Actually, Kantar sought, but did not obtain, an order that TRA identify with greater detail evidence of Kantar's *use* of trade secrets in response to Interrogatory 16.  KB32 (citing A1325-27).  TRA *identified* its trade secrets with particularity in response to a different interrogatory, Interrogatory 7, and voluntarily supplemented that response when requested.  A1184-1196, A2344-56.  Kantar never sought an order regarding the *identity* of trade secrets.  In fact, the only "order" at all regarding trade secrets was the court's endorsement of TRA's voluntary agreement to reduce its asserted trade secrets from 24 to 5, provided the narrowing would not be used against TRA.  A1066-67.

Kantar notes that a subsection of Rule 37 does not require a prior court order.  KB36.  While that may be correct, neither Kantar nor the court provided TRA with notice of which subsection was being applied.  A138-40, A1913.  The lack of notice underscores the unfairness of the sanction.

Kantar also complains that TRA's disclosures somehow denied Kantar "a meaningful opportunity to review TRA's…trade secrets evidence and question

appropriate witnesses." KB34.  But Kantar has not identified any specific harm it

suffered, explained what it did not understand about TRA's claims, or identified

specific additional discovery it would have taken or sought.  KB34, 38.  Indeed,

Kantar's request for more detailed use evidence was made pursuant to a contention

interrogatory allowed, under the court's Local Rules, only after all other fact

discovery has closed.  A1325-27.  The fact is Kantar had adequate notice of TRA's

"reasonably particular" trade secrets; the record contains no indication that Kantar

was unable to distinguish between "secret and non-secret information."  <u>MSCI Inc.

v. Jacob</u>, 945 N.Y.S.2d 863, 865 (N.Y. Sup. Ct. 2012); A1086 (citing Sit-Up at

*12).

     Moreover, Kantar cannot defend the court's failure to consider lesser

sanctions, instead terminating every claim without ever analyzing each claim's

disclosure.  Nor did the court ever assess whether this was an "extreme situation"

warranting the most "severe sanction."  A1565; <u>see</u> <u>Bobal v. Rensselaer

Polytechnic Inst.</u>, 916 F.2d 759, 764 (2d Cir. 1990) ("dismissal with prejudice is a

harsh remedy to be used only in extreme situations"); <u>Silva v. Cofresi</u>, 2014 U.S.

Dist. LEXIS 163140 * 6 (S.D.N.Y. Oct. 31, 2014) ("Severe sanctions such as

dismissal…are to be applied sparingly, where no other sanction will suffice");

<u>Regulatory Fundamentals Group LLC v. Governance Risk Mgmt. Compliance,

LLC</u>, 2014 U.S. Dist. LEXIS 107616 *44-45 (S.D.N.Y. Aug. 5, 2014) ("[A]

terminating sanction is justified in only the most egregious cases, such as where a party has engaged in perjury, tampering with evidence, or intentionally destroying evidence….") (internal quotation omitted).  The court had an obligation to consider lesser sanctions, especially where TRA had no opportunity to correct alleged deficiencies.  West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779-80 (2d Cir. 1999).  Kantar's suggestion aside, the court's ambiguous statement that TRA would "lose quickly" without narrowing its claims (A1058-59) can hardly be construed as reasonable warning of terminating sanctions, evaluation of lesser sanctions, or a replacement for legal analysis justifying sanctions.

Ultimately, this was hardly a "standard application of Rule 37(c)."  KB34.[5] Kantar had adequate notice of TRA's trade secrets and, at any rate, any defect was harmless.  Reversal would not interfere with a court's police powers (KB37-38), but would only ensure courts impose terminating sanctions only after properly applying law to facts.

### B.    Kantar Cannot Defend The Substantive Trade Secrets Rulings.

Kantar claims that TRA ignores the "holes" in its trade secrets case.  KB39. But, it is Kantar who fails to address the court's erroneous analysis or the fact that TRA is entitled to a ruling that considers all of its evidence and draws all

---

[5] Design Strategy, cited by Kantar, is distinguishable.  There, the prejudice would be "severe" as discovery would require reopening.  Design Strategy v. Davis, 469 F.3d 284, 296-99 (2d Cir. 2006).  No such finding could be made here.

reasonable inferences in its favor.  Nor does Kantar acknowledge trade secret cases often depend on circumstantial evidence.  See Leggett & Platt, Inc. v. Hickory Springs Mfg. Co., 285 F.3d 1353, 1361 (Fed. Cir. 2002) ("direct evidence is rarely available, thus requiring a reliance on circumstantial evidence").  TRA has shown it had sufficient circumstantial and direct evidence to overcome summary judgment (TRAB4-9, 34-36-38, 40-41) and hardly relied upon sheer "conjecture" or "conclusory averments."  KB42 (citing patent infringement, not trade secrets, cases).  Kantar's defense of the court's erroneous rulings does not hold up.

### 1.    Speed, Reliability, And Performance Trade Secret

Kantar argues this trade secret was merely the "speed, reliability, and performance" attributes of Media TRAnalytics.  KB40-41.  But Kantar's overly simplistic position is like arguing that the Coca Cola Company lost Coke's trade secret formula by listing the ingredients on the bottle.  TRA's detailed disclosures to Kantar under NDAs went well beyond what TRA disclosed publicly and the non-public details are material and protectable.  KB41; see Speedry Chem. Prods., Inc. v. Carter's Ink Co., 306 F.2d 328, 332 (2d Cir. 1962).

Kantar argues TRA's use evidence "conflates replicating a 'capability' with …the underlying technology."  KB41.  But the plain language of the e-mail TRA relies upon ███████████████████.  A1741.  It was the court that improperly inferred the email was referring to the replication of TRA's

capabilities, not misappropriating trade secrets "to speed up its own product development." A141. Were inferences drawn in TRA's favor, as required, the email supports TRA's claims. TRA's other use evidence which the court failed to analyze were not mere "sound bites" or speculation (KB42), but included ████

████████████████████████████████████████████ TRAB35-36.

Lastly, Kantar's assertion about databases (KB42) is irrelevant. TRA never claimed the Kognitio database as a trade secret and its speed, reliability, and performance trade secret exists independently of Kognitio. A1480-81.

### 2.     TRA's Remaining Trade Secrets

Kantar claims TRA failed "to identify any specific non-technical information that even theoretically qualified for protection." KB43.

But, in fact, the documents TRA claims as non-technical trade secrets are integral to TRA's ongoing endeavor. TRAB36 (Financial Secret), TRAB38 (Strategy Secret), TRAB39 (Positioning Secret), TRAB40 (Client Secret). These are not mere "business possibilities or goals" as Kantar claims (KB43), but contain the same the sort of specific information New York courts have considered trade secrets. See IBM v. Papermaster, 2008 U.S. Dist. LEXIS 95516 at *21-24 (S.D.N.Y. 2008) (granting injunction involving strategy secret); The Estee Lauder Cos., Inc. v. Batra, 430 F. Supp. 2d 158, 176 (S.D.N.Y. 2006) (recognizing product positioning secret); N. Atl. Instruments, Inc. v. Haber, 188 F.3d 38, 44 (2d Cir.

1999) (recognizing as trade secret "client list, which contain[ed] the identities and preferences of its client contacts"); Doubleclick Inc. v. Henderson, 1997 N.Y. Misc. LEXIS 577 at *9-17 (N.Y. Sup. Ct. 1997) (recognizing client and pricing information, product strategies, and revenue projections as trade secrets); A.F.A. Tours, Inc. v. Whitchurch, 937 F.2d 82, 89 (2d Cir. 1991) (client list secret where "not available from any other source" and efforts made to protect information).

Kantar broadly asserts that "TRA publically disclosed the applicable information." KB45-46. For instance, Kantar claims TRA's contract with Experian is not secret. Id. But TRA does not claim the *existence* of its Experian contract as a trade secret, only the specific terms, which were made available to Kantar only under NDAs. A1685-86. Kantar next claims that certain slides show that TRA publicly disclosed its trade secrets. KB45-46. However, as Kantar knows, these slides represent a fraction of the information TRA disclosed to Kantar. TRA scrupulously protected its non-public information, disclosing it only under the protection of written NDAs. Kantar cites no other evidence of public disclosures. A1423-24, A1482.

Lastly, Kantar claims TRA fails to explain how Kantar used TRA's information. KB47-48. But the entirety of circumstantial evidence, including ███████████████████████████████████████████ (A1542, A1615, A1618, A1772), the clear evidence Kantar possessed trade secrets, the fact that detailed

trade secret information was distributed within Kantar, the sensitive nature of that information (A1150, A1470-80, A1482, A1540-42, A1578, A1580, A1583, A1586-89, A1592, A1594, A1616, A1619, A1622-28, A1688-89), and the speed at which Kantar introduced its rival product following exposure to TRA's information (A1741, A1772, A2419), provides sufficient use evidence to deny Kantar's motion.

## III.    Damages

Kantar does not seriously dispute that TRA lost value[6] or that, as a legal matter, if TRA can prove causation, "lost valuation" damages are recoverable. Instead, Kantar defends the court's ruling precluding this measure of damages by repeating the unfounded conclusion that TRA's damages expert (Melissa Bennis) ignored other possible causes for TRA's decline in value (KB49-52) and by misunderstanding the nature of TRA's non-expert evidence.  Kantar's attacks lack merit.

---

[6] Kantar contends for the first time there is no basis to assume that valuations used for purposes of investment are equivalent to market value.  KB49, n17.  Kantar's own cases demonstrate that Kantar has waived this argument.  KB55 (citing Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co., 762 F.3d 165, 188 (2d Cir. 2014) and Pandrol USA, LP v. Airboss Ry. Products, 320 F.3d 1354, 1366-67 (Fed. Cir. 2003), both involving waivers of arguments first raised on appeal). Regardless, Kantar's argument is unsupported and non-sensical.

### A.    Kantar Provides No Basis To Affirm Bennis's Exclusion.

As detailed (TRAB44-45), Bennis' exhaustive analysis considered and eliminated <u>numerous</u> alternative causes to test whether it was Kantar's bad acts that caused TRA's value to plummet.[7]  A1850.  Clearly, Bennis did not simply rely upon a "temporal correlation" (KB50) between Kantar's bad acts and TRA's damages.[8]  Moreover, the notion that Bennis simply "parroted testimony" from TiVo's CFO, without bringing her own "expertise to bear," ignores Bennis' comprehensive analysis, which was not "undergirded by hearsay statements" as in <u>Marvel Characters, Inc. v. Kirby</u>, 726 F.3d. 119, 136 (2d Cir. 2013), cited by the court and Kantar.  A146; KB52-53.

---

[7] Kantar argues TRA did not carry its burden under <u>Shanahan v. Vallat</u>, 2008 U.S. Dist. LEXIS 77608 (S.D.N.Y. Oct. 3, 2008).  KB50.  But Bennis specifically considered and excluded market-wide phenomenon, including general economic conditions, such as the then-recent worldwide financial crisis, as causing the drop in TRA's value.  By comparing TRA with similar companies during the relevant time period, Bennis was able to rule out these causes, unlike the party in <u>Shanahan</u>.

[8]  Kantar's reliance on <u>Washburn v. Merck & Co</u>, 213 F.3d 627 (2d Cir. 2000) is inapplicable.  KB50.  The <u>Washburn</u> court affirmed exclusion of medical experts where one expert's opinions "were based largely on the temporal proximity of the vaccination to the onset of the [plaintiff's] symptoms *and* were not grounded in the methods of science" and another provided only "conclusory statements" <u>Washburn</u>, 2000 U.S. App. LEXIS 8601 * 4-8 (emphasis added).  A third expert's medical opinion did not "emanate from his own research in the field" and relied upon unreliable, inapplicable studies.  <u>Id.</u> at 8-9.  These concerns do not apply to Bennis' testimony.

Kantar argues its sales do not support Bennis' damages figure.  KB49.  But TRA's "lost valuation" damages derive from TRA's lost value, not from Kantar's ill-gotten gains.  Kantar also accused Bennis of being "willing to ignore all the indicia that what actually concerned investors was whether TRA had made anything of itself after three prior investment rounds."  KB49-50.  In reality, Bennis specifically considered investor concerns.  A1847-50.  Kantar's disagreement about the impact of those concerns may be fair game for cross-examination, but does not support exclusion.

Kantar also posits Bennis' inability to identify literature supporting her damages theory, citing <u>Wills v. Amerada Hess Corp.</u>, 379 F.3d 32, 49 (2d Cir. 2004), as a basis for exclusion.  KB49.  However, <u>Wills</u> noted "peer review and publication" *is just one factor* that a court "*may* consider" "in determining the reliability of the proffered testimony."  379 F.3d at 48 (emphasis added).  The <u>Wills</u> court affirmed exclusion because the expert "failed to satisfy **any** of the relevant [Daubert] factors" **and** failed to consider two other major causes for the plaintiff's cancer despite acknowledging them as "major risk factors."  <u>Id.</u> at 49-50 (emphasis added).  Bennis' testimony does not suffer from such defects.  Nonetheless, since Kantar never challenged the availability of "lost valuation" damages, but only whether TRA could prove them, Kantar has waived a broad attack on the underlying theory.

Additionally, Kantar claims the court properly excluded Bennis' testimony because she failed to consider competition from Nielsen.  However, Bennis' report spent two paragraphs analyzing competition from Nielsen.  A1849.  Kantar faults Bennis for supposedly being unaware of Nielsen's 2011 "single source" project (KB51), but the support for this claim is an email that does not even discuss a "single source" product.  A1099, A1459.  Moreover, Kantar's own expert ███

████████████████████████████████████████████████████

███ (A1560 at 364:4-21), so it is difficult to understand the significance of this supposed omission by Bennis or why it doomed her entire analysis.

Given Bennis' thorough analysis of multiple factors, Kantar's critique speaks only to the weight of Bennis' testimony, not its admissibility.  Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18 (2d Cir. 1996), cited by Kantar (KB52), says as much.  The Boucher court stated "[a]lthough expert testimony should be excluded if it is speculative or conjectural, or if it is based on assumptions that are 'so unrealistic and contradictory as to suggest bad faith' or to be in essence an 'apples and oranges comparison,' other contentions that the assumptions are unfounded 'go to the weight, not the admissibility, of the testimony.'"  Boucher, 73 F.3d at 21 (internal quotation marks omitted).  The court identified just one factor it felt Bennis insufficiently examined, but never suggested or found bad faith or

unrealistic assumptions tantamount to "apples and oranges" comparisons.  A145-46.  Accordingly, reversal is warranted.

### B.    Kantar Cannot Meaningfully Attack TRA's Other Damages Evidence.

TRA identified significant non-expert evidence from which a reasonable jury could conclude Kantar's bad acts devalued TRA.  TRAB50-51.  Kantar characterizes this evidence as "factually unsupported and legally irrelevant" and questions "how a jury could translate [these facts] into compensatory damages."  KB54.  Kantar is incorrect.

Significantly, TRA's basis for compensatory damages could include trade secret misappropriation *and* TRA's Unadjudicated Claims.  The facts underlying these claims, each supported by the record, formed a tapestry of evidence about Kantar's motive, intent, and opportunity to harm TRA.  TRAB50-51.

The court summarily and incorrectly found Lieberman's testimony supporting damages was speculative.  A147.  It was not.  TRA's inability to raise sufficient funds during its fourth investment round and sale to TiVo for $20 million are objective facts.  Lieberman's statements about the effect of TNS's rival product launch were not idle assumptions, but predicated on the fact that ████████

████████████████████████████████████

██████████████████████████████████████

████████████████████  A1458, A1634.  Also, Lieberman

was aware of Nielsen and identified their market share (A1459), making Kantar's contrary suggestion unfounded.  KB54.  Lieberman's statements, especially when coupled with TRA's other evidence, provided ample basis on which to deny Kantar's motion.

Moreover, Kantar's criticisms of TRA's non-expert evidence, speak to its weight, not admissibility.  The fact that, as would be expected, TRA stated during discovery that evidence needed "to be evaluated and analyzed by economic and other experts" (A2196, A2208 (cited at KB54)) is not a concession that such testimony is required or a bar to TRA seeking damages without such testimony.  See Apple Inc. v. Motorola, Inc., 757 F.3d 1286, 1330 (Fed. Cir. 2014) (exclusion of damages expert does not automatically negate right to recover damages).  Ultimately, a jury could "translate" these facts into compensatory damages by considering, among other things, TRA's $54 million valuation prior to Kantar's malfeasance and TiVo's $20 million purchase of TRA thereafter.  TRAB51.  If Kantar's evidence suggests other factors undermined TRA's value the result is a factual issue as to causation, with the precise damages calculation being a jury question.  See Brooktree Corp. v. AMD, 977 F.2d 1555, 1578 (Fed. Cir. 1992) ("Causation is a classical jury question").

## IV.    Other Remedies

### A.    Kantar's Effort To Exclude TRA's Other Theory Of Compensatory Damages Ignores The Record.

Kantar argues "TRA had to identify [other damages] theories and any evidence supporting them" when opposing Kantar's summary judgment motion. KB55.  Kantar, however, challenged only TRA's primary damages theory at summary judgment.  A1094-99 (challenging only TRA's loss of value theory).  Nevertheless, TRA plainly identified the existence of other theories to highlight the limited nature of Kantar's motion.  A1425.

Kantar's cases are distinguishable.  KB55.  In Sompo, the court would not consider on appeal an indemnification defense first raised in a motion for reconsideration before the district court.  762 F.3d at 188-89.  In Pandrol, this Court found a party waived arguments regarding an affirmative defense by not raising them in opposition to summary judgment.  320 F.3d at 1366-67.  Here, TRA fully disclosed its damages theories to Kantar well before Kantar's summary judgment motion, and Kantar did not attack them.  Any waiver is by Kantar.

Substantively, TRA's other theories were distinct from its diminished value theory (not merely "repackaged" versions (KB56)), and supported by ample disclosed evidence.  TRA timely disclosed its other theories in its initial disclosures, interrogatory responses, and expert report, including a theory grounded in Kantar's misappropriation of TRA's R&D.  A2220-21, A2225,

A2285-86.  Indeed, Bennis's report contained a detailed section explaining her calculations of Kantar's unjust enrichment, and Kantar had the opportunity to question Bennis or rebut her opinions with its own expert testimony.  A2292-95. Thus, the court wrongly excluded TRA's alternate compensatory damages theories.

### B.    Kantar Defends The Punitive Damages Ruling By Ignoring Its Flaws.

In defending the punitive damages ruling, Kantar does not defend the court's consideration of the equivalent of a second summary judgment motion without the requisite procedural protections; nor does Kantar address the court's failure to draw all reasonable inferences in TRA's favor.  KB56-58.  Instead, Kantar insists (KB57) the court considered all of TRA's evidence, but this is not true: the court neither cited nor considered all the evidence from which a jury could infer a "conscious disregard" of TRA's rights and a lack of good faith on Kantar's part. Critically, the court failed to consider conflicting statements from ████████

████████████████████████████████[9]  *Compare* A1580, A566.7 *with* A576.34.  ████████████████████████████

████████████████████████████████████████

---

[9] Kantar cites <u>Roginsky v. Richardson-Merrell, Inc.</u>, 378 F.2d 832, 853 (2d Cir. 1967), which is easily distinguished because there the court "clearly stated [it] had carefully considered the additional items cited" even though it did not "mention every item of evidence on which plaintiff had relied." 378 F.2d at 852-53.  Here, the court made no such finding.

██████████████████████   A reasonable jury could find that ██████████

conflicting statements, especially coupled with TRA's other evidence (A2242-44),

demonstrate a lack of good faith and 'conscious disregard of the rights of others.'"

KB56.

The court also improperly made factual findings and drew inferences in

Kantar's favor by speculating that Kantar's disclosed confidential information only

in good faith, thus resolving a fact dispute about ████████████████████

██████████████████████   A169, A1513; see Leggett & Platt, Inc., 285 F.3d

at 1362 ("summary judgment is inappropriate where, as here, a case may

ultimately turn on the credibility of witnesses") (citation omitted).

Moreover, the court did not address the impact of TRA's unadjudicated tort

claim (aiding and abetting breach of fiduciary duty), which includes an intent

element. As an unchallenged claim, it must be presumed meritorious for present

purposes. Consequently, if Kantar presumptively committed a tort, they certainly

cannot be presumed to have acted in good faith, and the exclusion of punitive

damages is unwarranted.

### C.   Kantar Relies On Inapplicable Injunction Cases And Misreads Its Contracts.

Kantar attempts to divert this Court's attention away from the non-expired

terms of several contracts still providing expressly for equitable relief. KB58-59.

But the relevant provisions in three of the contracts, each explicitly providing for equitable relief, remain in effect.  A2250, A2264, A2272-73, A2278.

Kantar's cases are inapplicable because they either involved expired confidentiality duties, a concession a party was not entitled to equitable relief, or no confidentiality provision at all.  KB59.  Additionally, TRA did not concede that a "head start" injunction is no longer appropriate.  KB58.  Instead, TRA specifically argues for its "right to seek an injunction to mitigate the effect of the acceleration" of Kantar to market.  TRAB60.  Moreover, expired confidentiality provisions have no logical connection to an injunction helping TRA recoup competitive advantages lost through malfeasance.

### D.    TRA Did Not Waive Jury Trial On Nominal Damages.

Moving to limit TRA's remedies, Kantar argued nominal damages for TRA would be just $1, below the $20 jury trial threshold.  A2149.  In response, TRA explained why such damages could exceed $20 (A2253-54), but the court rejected TRA's argument.  A164. A court transcript confirms that all the parties understood the court had limited TRA to nominal damages of no more than $1.  See, e.g., A2475-83 at 4:6-11 ("THE COURT: Waste my time scheduling a trial, do a pretrial order, come in with hundreds of exhibits and hundreds of witness and we will all sit here for a week and try it for a dollar").  Thus, Kantar cannot argue that

TRA has waived its right to challenge the court's ruling. KB60. TRA expressly reserved to right to appeal the court's underlying order. A17.

As explained in TRA's opening brief, the court wrongly held TRA could not possibly recover nominal damages exceeding $20. TRAB60-61. TRA has the right to pursue nominal damages before a jury that might also award it punitive damages.

## V.   Reassignment is Warranted.

Recent case law undermines Kantar's assertion that reassignment in the Second Circuit is "rarely granted." KB69. In November 2013, the Second Circuit stated reassignment "is not unusual." Ligon v. City of New York (In re Reassignment of Cases), 736 F.3d 118, 128 (2d Cir. 2013) (citing multiple cases where reassignment ordered), vacated in part on other grounds by, Ligon v. City of New York, 743 F.3d 362 (2d Cir. 2014). Moreover, in United States v. Awadallah, 436 F.3d 125 (2d Cir. 2006), cited by Kantar, the Second Circuit reiterated that reassignment is warranted where "the original judge would have substantial difficulty in putting out of her mind her previously expressed views, or where…advisable to preserve the appearance of justice." 436 F.3d at 135. This case squarely presents such concerns given the court's imposition of unwarranted terminating sanctions; frequent, improper weighing of evidence; inappropriate credibility findings in Kantar's favor; premature determination that Kantar acted in

"good faith," despite contrary evidence; failure to consider substantial TRA evidence; and denial of TRA's jury trial right, with the effect of abrogating all of TRA's claims, including the Unadjudicated Claims, which must in the present posture be presumed meritorious.

Kantar emphasizes a handful of rulings or actions that were not prejudicial to TRA (KB69), but overlooks the large number of errors that were dispositive of TRA's claims and remedies.  Nor can the "length" of the court's opinions (KB70) ameliorate their shortcomings.  Moreover, the court recently awarded Kantar attorney's fees, the subject of a related appeal filed on January 5, 2015 as Federal Circuit Case Number 15-1252.  The court's errors there reinforce the need for reassignment.

Upon remand a new judge would hardly "be starting from scratch" (KB70), but would benefit from this Court's rulings.  A new judge need only entertain pretrial motions and preside over trial.  Moreover, since the merits of the Unadjudicated Claims have never been reached, reassignment would not occasion any significant waste or duplication of efforts, especially when compared to the enormous benefits to the appearance of justice.

## <u>CONCLUSION</u>

TRA has shown why Kantar's arguments do not save the district court's numerous erroneous rulings.  TRA respectfully requests that this Court reverse and remand with instructions to reassign the case.

<u>/s/ Perry M. Goldberg</u>
Perry M. Goldberg

<u>/s/ Kevin S. Rosenberg</u>
Kevin S. Rosenberg

GOLDBERG, LOWENSTEIN
  & WEATHERWAX LLP
11400 West Olympic Blvd.
Suite 400
Los Angeles, CA  90064
(310) 307-4500

*Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that, on this the 16th day of January, 2015, I electronically filed the foregoing Non-Confidential Reply Brief of Appellant with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered users:

> Michael A. Albert
> Eric J. Rutt
> Charles T. Steenburg
> John Strand
> WOLF, GREENFIELD
>   & SACKS, P.C.
> Federal Reserve Plaza
> 600 Atlantic Ave.
> Boston, MA  02210
> (617) 646-8000

> *Counsel for Appellees*

I further certify that, upon acceptance and request from the Court, the required paper copies of the foregoing will be deposited with United Parcel Service for delivery to the Clerk, UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT, 717 Madison Place, N.W., Washington, D.C. 20439.

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

> /s/ Shelly N. Gannon
> Shelly N. Gannon
> GIBSON MOORE APPELLATE SERVICES
> 421 East Franklin Street, Suite 230
> Richmond, VA  23219

## <u>CERTIFICATE OF COMPLIANCE</u>
**With Type-Volume Limitation, Typeface Requirements,
And Type Style Requirements**

1.   This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

     this brief contains <u>7,000</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

     this brief has been prepared in a proportionally spaced typeface using <u>Microsoft Word</u> in <u>14 Times New Roman</u>.

Dated: January 16, 2015              <u>/s/ Perry M. Goldberg</u>
                                     Perry M. Goldberg

                                     <u>/s/ Kevin S. Rosenberg</u>
                                     Kevin S. Rosenberg

                                     *Counsel for Appellant*